[609 NYS2d 578]

In the Matter of THEODORE H. FRIEDMAN (Admitted as THEODORE HERZL FRIEDMAN), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, March 22, 1994

**APPEARANCES OF COUNSEL**

*Kenneth M. Bernstein* and *Jonathan K. M. Crawford* of

counsel *(Daniel L. Brockett* and *Hal R. Lieberman,* attorneys), for petitioner.

*Marvin E. Frankel* and *Michael S. Ross* of counsel *(Kramer, Levin, Naftalis, Nessen, Kamin & Frankel,* attorneys), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent, Theodore H. Friedman, was admitted to the practice of law in New York by the First Judicial Department on April 1, 1957 under the name Theodore Herzl Friedman. At all times relevant herein respondent has maintained an office for the practice of law within the First Judicial Department.

Respondent was served with a notice and statement of charges which allege 23 separate counts of professional misconduct stretching over a decade and arising out of respondent's representation of personal injury claimants in three separate matters: (1) *Mowen v Yangming Mar. Transp. Corp.* (78 Civ 5537 [Counts One-Six]); (2) *Estate of Krieger v City of New York* (Sup Ct, NY County, index No. 8228/80 [Counts Seven-Seventeen]); and (3) *Hill v Soley* (Sup Ct, Bronx County, index No. 18762/82 [Counts Eighteen-Twenty-Three]).

Pursuant to 22 NYCRR 603.4 (b) and (d) and the Committee Rules, Honorable Donald J. Sullivan was appointed by this Court to serve as Special Referee.

Hearings were held before the Special Referee on 26 days commencing on July 1, 1990 and ending on May 22, 1992. The transcript of the proceedings runs over 5,000 pages. Thirty witnesses testified, including two preeminent ethics experts (one for each side). During the course of the hearings the following facts were adduced and conclusions reached.

### *Mowen v Yangming Mar. Transp. Corp.*—Counts One-Six

Respondent represented the plaintiff Lorraine Mowen in a wrongful death action arising out of a ship collision in which her husband, Dennis Mowen, lost his life. The respondent was assisted in this matter by his then partner, Jethro M. Eisenstein, and by Frederick J. Cuccia of the firm of Cuccia and Oster. The trial took place before the Honorable Pierre N. Leval of the United States District Court for the Southern District of New York in late 1981 and early 1982. During the

trial, a report by an expert called by respondent was marked for identification, as PX-337 (B). Judge Leval would not allow PX-337 (B) in evidence, but ruled that the respondent could use it argumentatively in his summation. After the jury commenced their deliberation a note was received from them requesting the trial exhibits. The trial court instructed the exhibits in evidence be collected and delivered to the jury and repeated the admonition about Exhibit 337 (B) which was used in summation but was not in evidence-in-chief. Thereafter, the jury returned a verdict in favor of the plaintiff and shortly after the announcement of the jury's verdict, it was discovered that PX-337 (B) had been given to the jury. Respondent thereafter submitted an affidavit, sworn to March 8, 1982, in which he placed the entire responsibility for sending PX-337 (B) to the jury room on his co-counsel, Mr. Cuccia. Respondent stated that Mr. Cuccia had sent the exhibit into the jury room, in the mistaken belief that it was part of the evidence received. Respondent, however, made no effort to communicate with Mr. Cuccia before submitting this affidavit, casting the blame on him, and no affidavit was submitted by Mr. Cuccia, who was abroad from March 7 to March 17, 1982 and who knew nothing of respondent's affidavit at that time.

After a hearing, in an opinion dated December 3, 1982, Judge Leval found respondent to have engaged in the "willful misconduct of * * * tampering with the evidence transmitted to the deliberating jury." Judge Leval stated that respondent had "surreptitiously includ[ed] among the exhibits to be sent to the jury an exhibit marked for identification that he well knew had not been received in evidence." Judge Leval concluded that when the jurors were deliberating and asked for all evidence in the case, respondent caused the exhibit to be sent to them "intentionally and with full awareness that it was in violation of the court's order and rulings as to the receipt of the exhibit." Judge Leval rendered an opinion that, based upon the transcripts, respondent had lied during the hearing claiming that he had left the courtroom for lunch and had entrusted his co-counsel, Mr. Cuccia, to handle the exhibits that were sent to the jury. *(Red Star Towing & Transp. Co. v Cargo Ship "Ming Giant",* 552 F Supp 367, 382-386 [1982].)

Pursuant to a letter of complaint from Judge Leval, four separate charges were filed against respondent in a Federal disciplinary proceeding. Thereafter, at the Federal disciplinary hearing on January 9, 1985, respondent, pursuant to a plea bargain agreement, admitted the second charge, namely,

that he prepared, swore and caused to be served an affidavit without personal knowledge of the facts therein, in exchange for dismissal of the other Federal disciplinary charges. On November 4, 1985, the Committee on Grievances of the Southern District recommended a sanction that a formal letter of reprimand be issued to respondent and that this letter be made a matter of public record. A subsequent letter of censure was written and distributed by Judge Vincent L. Broderick, Chairman of the Committee on Grievances, on June 23, 1986.

Thereafter, the Departmental Disciplinary Committee filed a petition in this Court seeking the imposition of reciprocal discipline pursuant to 22 NYCRR 603.3. Respondent objected to the imposition of discipline greater than that imposed by the Federal disciplinary committee. By order entered February 20, 1987, this Court denied the Committee's petition and directed that the *Mowen* matter be referred to the Departmental Disciplinary Committee "for investigation and hearings, if necessary, as to *all the issues raised.*"

## Count One

The essential elements of Count One are that respondent intentionally caused to be placed into the jury room, during deliberations, an exhibit (PX-337 [B]) when he knew that same had not been received in evidence, and the placing of said exhibit was done with full awareness that it was in violation of the court's order and ruling as to the receipt of the exhibit in evidence.

Viewing all of the evidence under a "fair preponderance" standard, the Special Referee found that the Committee had failed to establish that respondent intentionally sent Exhibit 337 (B) to the jury room. As such, Count One was not sustained.

## Count Two

This count concerned false statements made by respondent in his affidavit dated March 8, 1982, which respondent prepared, swore and caused to be filed in the *Mowen* action in response to the posttrial motion concerning the discovery of the unauthorized exhibit in the jury room. Specifically, respondent was charged with swearing to facts, to wit, that Cuccia was responsible for sending the unauthorized exhibit into the jury room, about which he had no personal knowl-

edge or factual basis, direct or indirect. Thus, it was alleged that respondent violated Code of Professional Responsibility DR 1-102 (A) (5) (engaging in conduct prejudicial to the administration of justice) and (6) (engaging in conduct that adversely reflects on his fitness to practice law) and DR 7-106 (C) (1) (stating or alluding to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence).

The essential elements of Count Two, except for slight modification, are word-for-word identical to the second charge issued by the Federal Committee on Grievances to which respondent admitted and for which he was sanctioned. Relying on that admission by respondent, the Special Referee sustained Count Two.

### Counts Three and Four

Count Three alleges that respondent acted with *reckless disregard* for the truth in making false statements about Cuccia in his March 8, 1982 affidavit without making any effort to verify them with Cuccia. As a result of his actions respondent was charged with violating DR 1-102 (A) (5) and (6).

In the alternative, Count Four alleges that respondent *knowingly* made false statements in his affidavit dated March 8, 1982. As a result, respondent was charged with violating DR 1-102 (A) (4), (5) and (6), DR 7-102 (A) (5) (knowingly making a false statement of law or fact in his representation of a client), (6) (participating in the creation or preservation of evidence when he knows or it is obvious that the evidence is false) and (8) (knowingly engaging in other illegal conduct or conduct contrary to a disciplinary rule during his representation of a client).

Respondent's admission to the second Federal disciplinary charge that he had no personal knowledge or factual basis for asserting in his affidavit that Cuccia was responsible for putting Exhibit 337 (B) in the jury room and that Cuccia had acted in the good-faith belief that it was proper to send in the exhibit was relied upon.

In addition, in May of 1987, respondent waived immunity and testified before a Manhattan Grand Jury concerning the *Krieger* case. The prosecutor cross-examined respondent on various matters including the affidavit he submitted in the *Mowen* case. During his testimony before the Grand Jury,

respondent admitted that his affidavit blaming Cuccia was false.

In addition to the false statements about Cuccia, it was alleged that respondent's affidavit contained numerous other false or misleading statements of material fact including (i) that Cuccia handled the exhibit marshalling process; (ii) that all of the exhibits going to the jury were made available to counsel; (iii) that defense counsel had access and opportunity to examine the exhibits before the Clerk moved them into the jury room; (iv) that the Clerk had checked with all counsel as to whether the plaintiffs' exhibits had been reviewed, and (v) that all counsel had assented before those exhibits were moved into the jury room.

These statements were contradicted by the testimony of others present in the *Mowen* courtroom, who said that respondent was involved in the exhibit marshalling process—and the Clerk of the Court who stated that he relied completely on respondent in connection with the review of exhibits. Respondent's sworn statements in his affidavit about what transpired during the period when the exhibits were being collected are also directly at odds with his subsequent position that he was not present in the courtroom when these events were occurring.

Although alternative counts had been alleged against respondent of recklessly making false statements in his affidavit (Count Three) and knowingly making false statements in his affidavit (Count Four), the Special Referee sustained both charges. The Special Referee concluded that an attorney's submission of an affidavit blaming his co-counsel of so serious an act and purporting to describe his co-counsel's subjective state of mind, without making any effort to confirm the truth with co-counsel, is certainly reckless in the circumstances. Based upon respondent's admitted conversation with Cuccia about the exhibit in question not being in evidence and the fact that many of the statements in respondent's affidavit were contradicted by the testimony of others present in the courtroom and the position subsequently taken by respondent, the Special Referee concluded that respondent knowingly made false statements in the subject affidavit.

## Count Five

Count Five concerned respondent's testimony at the July 20, 1982 hearing before Judge Leval held for the express purpose

of taking evidence on the subject of the unauthorized exhibit in the jury room. Respondent testified that he was not present in the courtroom during the exhibit marshalling process. Based upon this conduct respondent was charged with intentionally making a false and misleading statement while testifying under oath in violation of DR 1-102 (A) (4), (5) and (6) and DR 7-102 (A) (5), (6) (erroneously cited as DR 1-702 [A] [6] [participating in the creation or preservation of evidence knowing or when it is obvious that the evidence is false]) and (8) (erroneously cited as DR 1-702 [A] [8] [knowingly engaging in other illegal conduct or conduct contrary to a disciplinary rule]).

Upon the evidence presented, the Special Referee found that respondent intentionally made false and misleading statements while testifying under oath and as such sustained Count Five.

### Count Six

Count Six alleges that respondent failed to advise the court of inaccuracies in his affidavit, once having been informed through Mr. Cuccia that portions of the affidavit were inaccurate. As such, respondent was charged with violating DR 1-102 (A) (4), (5) and (6) and DR 7-102 (A) (3) (concealing or knowingly failing to disclose that which he is required by law to reveal) and (6).

The record indicates that Mr. Cuccia returned from Europe on or about March 17, 1982 and when made aware of the contents of the affidavit submitted by respondent to Judge Leval challenged the contents of the affidavit. At no point prior to, during or subsequent to Judge Leval's hearing, did respondent take any steps to inform Judge Leval of Mr. Cuccia's position.

Based upon the evidence presented the Special Referee concluded that respondent knew or should have known of the inaccuracies of the allegations as set forth in the affidavit and in failing to rectify the record he violated the disciplinary rules charged. As such, Count Six was sustained.

### *Estate of Krieger v City of New York*—Counts Seven-Seventeen

The respondent represented Miriam Krieger and the Estate of Aaron Krieger in a civil negligence lawsuit filed in Supreme Court, New York County. The plaintiff sought mone-

tary damages for the death of Aaron Krieger, who fell down an elevator shaft on April 4, 1979. Named as defendants in the case were the City of New York which owned the building and Universal Elevator Company which had been retained by the City to maintain the repair of the elevator. Stanton Trading Corporation, a tenant of the building, and Aaron Krieger's employer at the time of his fatal fall, was impleaded as a third-party defendant.

A central issue in the plaintiff's claim against the City was whether the safety devices on the elevator were working properly at the time of Aaron Krieger's death. To establish its defense, the City, represented by Laura Shapiro of the Corporation Counsel's office, intended to call Michael Cohen, a Stanton employee at the time of the accident, to testify about the manner in which Stanton employees operated the elevator.

The respondent retained Mr. Elliot Goldman, a private investigator, to investigate the accident and prepare witnesses for trial. Respondent performed no background investigation of Mr. Goldman prior to retaining him. Mr. Goldman was given authority to compensate witnesses without prior approval from respondent or anyone in respondent's office. Respondent did not give Mr. Goldman any guidelines to follow with respect to the interviewing of witnesses and the taking of statements.

Under the terms of the agreement with respondent, Mr. Goldman was promised only 50% of Goldman's hourly rate on billing but an additional 100% of this rate on accumulated hours if the case was successful.

During the course of the trial, Michael Cohen told Ms. Shapiro that respondent's investigator, Goldman, was trying to bribe him. Thereafter, the New York City Department of Law and Department of Investigation commenced an investigation.

Cohen met with Goldman and respondent and secretly tape recorded their conversation. During the course of the conversation respondent asked Cohen to testify falsely about various matters, including whether he had ever met with respondent and whether Cohen had been offered or paid any money.

During the course of the trial, respondent failed to disclose to the court that another witness, Arthur Eilets, had testified falsely about significant credibility matters which respondent knew were false. Eilets also stated to Cohen in tape recorded

conversations that respondent had "clued" him to give false testimony about certain substantive issues as well. The case eventually resulted in a mistrial, declared in January 1986.

Arthur Eilets and Elliot Goldman were indicted in February 1986 in connection with these incidents. Goldman was tried and convicted in April 1987 of bribery of a witness and solicitation of perjury. Respondent was also indicted for subornation of perjury and other crimes for his role in the *Krieger* case, but was eventually acquitted of these criminal charges.

## Counts Seven through Ten

Respondent was charged with soliciting or requesting Michael Cohen, a prospective witness for the City of New York in the *Krieger* case, to (a) give false testimony *at trial* that his only meeting with respondent consisted entirely of the discussion as to whether he, Cohen, was required to meet with the Assistant Corporation Counsel (Count Seven) and (b) give false testimony *at trial* that no one had paid or had offered to pay Cohen money in connection with his prospective appearance as a witness (Count Eight). It was alleged that by his actions, respondent violated DR 1-102 (A) (4), (5) and (6) and DR 7-102 (A) (4) (knowingly using perjured testimony or false evidence), (6) and (8).

In the alternative, respondent was charged with (a) requesting Michael Cohen, a prospective witness for the City of New York, to make false statements *to opposing counsel,* Laura Shapiro of the Corporation Counsel's office, that Cohen's only meeting with respondent consisted entirely of a discussion as to whether he, Michael Cohen, was required to meet with the Assistant Corporation Counsel (Count Nine) and (b) requesting Michael Cohen to make false statements *to opposing counsel,* Laura Shapiro, that no one had paid or had offered to pay Michael Cohen money in connection with his prospective appearance as a witness (Count Ten). As a result it was alleged that respondent violated DR 1-102 (A) (4), (5) and (6), DR 7-102 (A) (3) (concealing or knowingly failing to disclose that which he is required by law to reveal) and DR 7-109 (A) (prohibits suppression of any evidence that the lawyer or his client has a legal obligation to reveal or produce).

Although Counts Nine and Ten were charged as alternatives to Counts Seven and Eight, the Special Referee sustained all four counts. The Special Referee concluded after a reading of the tape and surrounding circumstances that it was clear that respondent was preparing Mr. Cohen to give false testi-

mony at the *Krieger* civil trial. According to the Special Referee, the meeting met the test of coaching and instructing Mr. Cohen as to what to say on the witness stand, and further, offering Mr. Cohen a theory to reconcile any conflicting statements that he may have given.

The Special Referee further found that a direct misrepresentation of material fact to opposing counsel made at the direction of respondent with the intent to induce reliance thereon is unethical professional conduct.

### Count Eleven

This count alleges that respondent solicited and requested Michael Cohen to give false testimony that he had been and recalled being present when Wilhemina Oliver, a Manager for the City of New York, was told of dangerous conditions concerning the elevator which was the site of the accident and that she promised to have those conditions corrected. Respondent was charged with violating DR 1-102 (A) (4), (5) and (6) and DR 7-102 (A) (4), (6) and (8).

The Special Referee concluded that although the evidence submitted in reference to this charge was at times contradictory, the credible evidence established that respondent asked Mr. Cohen to testify falsely about Wilhemina Oliver, or at least, that respondent asked Mr. Cohen to say things which Cohen did not know or believe to be true. As such, the Special Referee sustained Count Eleven.

### Count Twelve

Count Twelve alleges that respondent solicited and requested Arthur Eilets, a witness for the plaintiff in the *Krieger* case, to give false testimony. As a result, respondent was charged with violating DR 1-102 (A) (4), (5) and (6) and DR 7-102 (A) (4), (6) and (8).

There was no direct evidence to support this charge. What was relied upon was circumstantial evidence, that is, conversations between Cohen and Eilets, and Goldman and Eilets and the Special Referee found that the essential elements of this charge were not established by a preponderance of the evidence. As such, Count Twelve was not sustained.

### Count Thirteen

This count alleges that respondent was present when a

witness for the plaintiff, Arthur Eilets, gave material false testimony, which respondent knew to be false and he took no steps to reveal the fraud to the court or the parties. As a result, respondent was charged with violating DR 7-102 (B) (2) (a lawyer who receives information clearly establishing that a person other than his client has perpetrated a fraud upon a tribunal shall promptly reveal the fraud to the tribunal).

Respondent admits that he knew Eilets was lying when he testified at the *Krieger* trial; however, he did not believe that he was obliged to make some corrective disclosure to the court. Respondent's position was that his duty was excused in this case because Eilets' false testimony went to collateral matters and because it was elicited on cross-examination, as opposed to direct examination, and thus the false testimony was not a fraud upon the tribunal within the meaning of the disciplinary rule.

Counsel from the Departmental Disciplinary Committee, however, pointed out that Eilets' testimony was pivotal to the respondent's case. Eilets was respondent's lead-off witness, he was on the stand for four days, he was prepared for said testimony by respondent, and he was paid $1,900 plus a suit and transportation.

The Special Referee concluded that Eilets gave material false testimony which respondent knew to be false and took no steps to reveal said facts to the court or parties and thus violated DR 7-102 (B) (2). As such Count Thirteen was sustained.

### Count Fourteen

This count alleges that respondent failed to supervise and give appropriate instructions to his investigator, Elliot Goldman, with respect to, among other cases, the *Krieger* case. It was further alleged that respondent failed to take reasonable remedial action after it became apparent that Goldman was engaged in unethical and illegal behavior. As a result respondent was charged with violating DR 1-102 (A) (5) and (6).

The record indicates that respondent began using Goldman's services as a private investigator in 1979. Goldman eventually became respondent's primary investigator, working on 90% of respondent's cases. Respondent performed no background investigation of Goldman and never discussed any guidelines for conducting interviews of witnesses or compensating them for expenses. A routine background check would

have revealed that in 1972 Goldman had been indicted for bribing a witness in a personal injury case and that he had pleaded guilty to a lesser included charge.

Even assuming that respondent had no obligation to do a background check on Goldman, there came a point in time when respondent should have been alerted that Goldman was engaged in questionable activities and he should have taken action. In 1985, Goldman backdated a witness statement in the *Krieger* case and brought this fact to respondent's attention. Respondent was also made aware of the contents of a tape of a November 21, 1985 meeting between Goldman and Cohen wherein Goldman stated that Cohen was delighted with the money and that he (Goldman) can get him (Cohen) to sign anything. Respondent was also aware in February 1986 that Goldman was indicted for bribery of a witness based on the November 21, 1985 meeting with Cohen, yet he continued to use Goldman's services. Respondent claimed that it was not improper to continue to employ Goldman after he was indicted since there was no evidence of misconduct by Goldman after that point.

The Special Referee concluded that once respondent was made aware of Goldman's questionable activities, he had an affirmative duty to take reasonable remedial action to rein in and control Goldman as a private investigator. The Special Referee sustained Count Fourteen insofar as it alleged that respondent violated DR 1-102 (A) (5).

### Count Fifteen

This count alleges that respondent improperly acquiesced in the payment of compensation to a witness in the *Krieger* case, namely, one Arthur Eilets, contingent on the content of Eilets' testimony. Respondent was charged with violating DR 7-109 (C).

The Special Referee found that the amount of compensation paid to Mr. Eilets appeared to be generous, but he failed to find that the record substantiated the position that the payments were contingent on the contents of Eilets' testimony. As such, Count Fifteen was not sustained.

### Count Sixteen

This count alleges that respondent entered into a contingency fee arrangement with Mr. Goldman, a nonlawyer, under

which respondent agreed to pay Goldman an hourly rate and he would receive additional compensation over and above that rate contingent on the success of the litigation. Respondent was charged with violating DR 3-102 which prohibits fee splitting with a nonlawyer.

The Special Referee found that it was clear that respondent's fee arrangement with Goldman was contingent on the outcome of the *Krieger* case, and it created an incentive for Goldman to make that outcome eventually beneficial to him and created the incentive to influence the testimony of a witness. As such, the Special Referee sustained Count Sixteen.

## Count Seventeen

This count alleged that respondent offered and paid, and acquiesced in the payment of, unreasonable and excessive sums of money and other benefits to witnesses and prospective witnesses, in particular, fees to Joseph Ferranti, an elevator inspector employed by the New York City Department of Buildings, and payments to Mordechai Margolese, a co-worker of Aaron Krieger and Mr. Eilets. Respondent was charged with violating DR 7-109 (C) (1).

Since the record indicated that payments were made to these witnesses without any consideration for their lost time and expense incurred, the Special Referee concluded that such were unreasonable and excessive. As such, Count Seventeen was sustained.

With respect to *Hill v Soley* (Sup Ct, Bronx County), the Special Referee did not sustain any of Counts Eighteen through Twenty-Three relating to this litigation.

The Special Referee sustained 14 of the 23 charges as set forth above.

Respondent is a graduate of Harvard Law School and became a partner in the Manhattan firm which is today known as Phillips Nizer. He left Phillips Nizer in the 1960's to form his own firm where he has specialized in personal injury cases. He has submitted a plethora of references and letters attesting to his probity, character and skill.

On March 16, 1993, Special Referee Donald J. Sullivan issued his written report recommending that respondent should be suspended from the practice of law for a period of two years.

By petition dated April 23, 1993, the Departmental Discipli-

nary Committee now seeks an order confirming the findings of the Special Referee and imposing whatever sanction the Court deems just and equitable, but no less severe than the two-year suspension recommended by the Special Referee.

Respondent cross-moves for an order disaffirming the Special Referee's report as it relates to the findings of misconduct against respondent and dismissing all charges. In the alternative, respondent requests that if any charges are sustained, no more than a censure should be imposed as the sanction.

■ A review of the evidence presented to the Special Referee indicates that there is ample support for the Special Referee's findings that respondent is guilty of multiple serious violations of the Code of Professional Responsibility.

During the course of his representation of the plaintiff in the *Mowen* case, respondent made false statements without personal knowledge or factual basis in an affidavit to Judge Leval (the charge respondent admitted in the Federal disciplinary hearing); respondent knowingly made false statements of fact in his affidavit to Judge Leval; respondent gave false and misleading testimony under oath to Judge Leval at a hearing; and respondent failed to notify the court of the false statements in the affidavit once he was informed by Cuccia that the affidavit was false. Respondent's actions in the *Mowen* case were detrimental to his client in that such resulted in the jury's award for certain losses being reduced, or in the alternative, if plaintiff did not agree to the reduction, a new trial would be ordered.

In view of the fact that Count Three (which alleges that respondent acted with reckless disregard for the truth in making false statements in his affidavit) and Count Four (which alleges that respondent made false statements in his affidavit knowing that such statements were false) were charged and argued in the alternative, we find the Referee's sustaining both counts to be inconsistent. In view of the admissions by respondent in Count Two, and the testimony of others present in the *Mowen* courtroom which clearly indicated that respondent was involved in the exhibit marshalling process, we conclude that respondent intentionally made false statements in his affidavit and as such, we dismiss Count Three and sustain Count Four. The act of respondent is either intended or not intended, it cannot simultaneously be both. *(People v Gallagher, 69 NY2d 525, 529.)*

Respondent's claim that the evidence fails to establish that

he intentionally gave false testimony to Judge Leval at the hearing on July 20, 1982 (Count Five) is without merit. Respondent's testimony at the hearing that he was not present in the courtroom during the exhibit marshalling process was contradicted by the *Mowen* trial transcript which placed him in the courtroom throughout that period.

Respondent's claim that he had no duty to inform the court of the false statements in his affidavit (Count Six) because he was only made aware of the fact that it was false on the eve of the hearing, is also lacking in merit. The record established that at some point after Cuccia returned from abroad on March 17, 1982 and prior to Judge Leval's hearing on July 20, 1982, respondent's partner, Eisenstein, learned from Cuccia that Cuccia was outraged by the accusations made by respondent in the affidavit and communicated this information to respondent on July 9, 1982. On repeated occasions prior to the hearing, Eisenstein stated that he asked respondent to discuss this issue but to no avail. Moreover, prior to learning of the falsity of the affidavit from Cuccia, respondent could not have believed what he wrote about Cuccia's state of mind since respondent admitted that he had conversations with Cuccia prior to the exhibit marshalling in which Cuccia acknowledged that Exhibit 337 (B) was not to go to the jury.

As such, respondent clearly had a duty to inform Judge Leval of the false statements and he failed to do so.

With respect to the *Krieger* case, respondent solicited and requested Cohen, a prospective witness, to give false testimony at the trial; respondent solicited and requested Cohen, a prospective witness, to make false statements to opposing counsel; respondent failed to disclose to the court that one of the witnesses for the plaintiff gave material false testimony; respondent failed to supervise his private investigator; respondent engaged in fee splitting with a nonlawyer; and respondent paid unreasonable and excessive compensation to witnesses. As a result of respondent's actions a mistrial was declared in the *Krieger* case.

Counts Seven, Eight, Nine and Ten were respectively charged and argued in the alternative, but all were sustained by the Referee. However, the fact that respondent solicited Cohen to give false testimony at trial does not preclude the fact that respondent also solicited Cohen to make false statements to opposing counsel. Accordingly, the Special Referee properly sustained all four counts.

The balance of respondent's claims with respect to the sufficiency of the evidence supporting the remaining *Krieger* counts are without merit. The tape-recorded conversations between respondent and Cohen voluntarily made by Cohen, as part of a police investigation, were stipulated into evidence by respondent and did not touch upon any attorney-client or work product privilege.

■ Finally, respondent's argument that the application of the fair preponderance of evidence standard of proof in attorney disciplinary proceedings violates his due process rights under the United States and New York State Constitutions has been rejected by the New York Court of Appeals. That Court has conclusively determined that the standard of proof in attorney disciplinary proceedings is a fair preponderance of the evidence. *(Matter of Capoccia,* 59 NY2d 549 [1983].) Of course, there is no requirement of a criminal conviction to sustain a charge in an attorney disciplinary proceeding. While respondent argues that the clear and convincing evidence standard should be adopted by this Court he has set forth no valid reason why this Court should entertain a change of the law in New York and apply a different standard.

■ The sanction of suspension from the practice of law for a period of two years recommended by the Special Referee is far too lenient given the serious violations of the Code of Professional Responsibility involved, which as the Special Referee noted, go to the heart of the ethical responsibility of a practicing lawyer. Respondent's violations include several acts of intentional dishonesty, including the filing of a knowingly false and misleading affidavit, the giving of false testimony at a hearing before then Southern District Judge Pierre N. Leval, and the solicitation of false testimony from a fact witness.

Any one of these many serious violations would be a ground for removal of respondent from the roll of attorneys. The fact that there were many discrete acts of misconduct leads ineluctably to the conclusion that the only just punishment for respondent must be disbarment. *(See, e.g., Matter of Kleiman,* 107 AD2d 241.) As we noted over 70 years ago, false testimony, even if not technical perjury, and the making of false affidavits *should* result in disbarment *(Matter of Popper,* 193 App Div 505). "The giving of false testimony strikes at the very heart of the judicial system. That an officer of the court should countenance it in another is intolerable. That he

should himself be guilty of such an offense against good morals and the public weal is not to be condoned. By such conduct he has forfeited the confidence of the court and his right to its continued certificate of good character and integrity" *(supra,* at 512).

In a similar case, in which we disbarred an attorney, we noted: "The concededly false answers given and respondent's lack of candor, whether technically perjurious or not, breached the standards of professional ethics" *(Matter of Dougherty,* 7 AD2d 163, 165; *see also, Matter of Kunstler,* 248 App Div 393). To the same effect, in *Matter of Schildhaus* (23 AD2d 152, 155-156), we held: "An attorney is to be held strictly accountable for his statements or conduct which reasonably could have the effect of deceiving or misleading the court in the action to be taken in a matter pending before it. The court is entitled to rely upon the accuracy of any statement of a relevant fact unequivocally made by an attorney in the course of judicial proceedings. So, a deliberate misrepresentation by an attorney of material facts in open court constitutes serious professional misconduct. (See *Matter of Rotwein,* 20 A D 2d 428, 430. See, further, Drinker, Legal Ethics, p. 74; 7 C. J. S., Attorney and Client, § 23, p. 741.)"

In the instant case, respondent was found to have lied at a hearing held by a Judge of the Federal Court and to have submitted a knowingly false affidavit which unfairly and reprehensibly cast his own guilt upon a blameless fellow member of the Bar. In addition, respondent, *inter alia,* solicited and requested a witness to give false testimony at a trial and stood by when another witness gave material false testimony which respondent knew to be false without revealing the fraud to the court or the parties.

These acts constitute a pattern of conduct by respondent which demonstrate a contempt for the legal and judicial process as well as for the profession. "One need not be a lawyer to recognize the impropriety of such conduct. For an attorney practicing for nearly 40 years in this State, such misconduct is inexcusable, notwithstanding an impressive array of character witnesses who testified in mitigation" *(Matter of Cohn,* 118 AD2d 15, 48).

In view of these serious acts of misconduct which had the effect of perverting the administration of justice, we reject the recommended suspension of respondent and find that disbarment of the respondent is the only proper punishment.

The violations of the canons of ethics by the respondent were not simply inadvertent or solitary peccadillos. They consisted of a pattern of professional misconduct persisted in as a course of conduct for at least several years. For this Court to impose any other sanction would ignore our responsibility to the legal profession and the public.

Accordingly, the Disciplinary Committee's petition to confirm the Special Referee's report is granted to the extent that the findings of the Special Referee sustaining Counts Two, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven, Thirteen, Fourteen, Sixteen and Seventeen are confirmed; the Special Referee's finding with respect to Count Three, as well as the recommended sanction of suspension for a period of two years are disaffirmed. Respondent's cross motion for an order disaffirming the Special Referee's report as it relates to the findings of misconduct against respondent is granted only to the extent of disaffirming the finding as to Count Three and in all other respects respondent's cross motion is denied. Respondent is disbarred and his name ordered stricken from the roll of attorneys in the State of New York.

MURPHY, P. J., SULLIVAN, CARRO, ASCH and RUBIN, JJ., concur.

The application is granted to the extent that the findings of the Special Referee sustaining Counts Two, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven, Thirteen, Fourteen, Sixteen and Seventeen are confirmed; the Special Referee's finding with respect to Count Three, as well as the recommended sanction of suspension for a period of two years are disaffirmed; respondent's cross motion for an order disaffirming the Special Referee's report as it relates to the findings of misconduct against respondent is granted only to the extent of disaffirming the finding as to Count Three and in all other respects respondent's cross motion is denied; and respondent is disbarred and his name ordered stricken from the roll of attorneys and counselors-at-law in the State of New York, all effective April 22, 1994. [As amended by unpublished order entered June 7, 1994.]