[625 NYS2d 225]

In the Matter of ALAN H. BALLINGER, a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, April 25, 1995

**APPEARANCES OF COUNSEL**

*Raymond Vallejo* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Howard Benjamin* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent was admitted to the practice of law in New York in 1972, at this Judicial Department. In 1987 he pleaded guilty, in United States District Court for the Southern District of New York, to charges of making false statements in support of a loan application (18 USC § 1014) and wire fraud (18 USC § 1343). On July 6, 1989 we determined that these Federal felonies were "serious crimes" within the meaning of Judiciary Law § 90 (4) (d), and ordered respondent suspended from practice pending final disciplinary action (148 AD2d 152). Respondent was ordered to show cause why a final order of "suspension, censure or removal from office" should not be made (Judiciary Law § 90 [4] [g]).

In 1984 respondent was invited to become a general partner and manager of a limited partnership involved in thoroughbred breeding syndication. Respondent's patron in this venture was Irwin Feiner, a racehorse owner, who respondent soon learned was under criminal investigation. (Feiner would later be convicted of fraud and tax evasion, and sentenced to four years' imprisonment.) In an effort to raise working capital for the partnership, respondent applied for a series of loans from the North Florida Production Credit Association. Inasmuch as respondent did not have reportable income sufficient to justify the needed credit, he submitted to the lending agency a copy of his girlfriend's 1983 income tax return, with pertinent data fraudulently altered to make it appear that the return was his own. The Credit Association approved the application and granted respondent about $500,000 in loans.

In 1985 respondent joined Feiner in the creation of another partnership, called Sagaponack II, which would be involved in the purchase and sale of thoroughbred horses as a tax shelter. There were 19 investors sharing this venture's 34 units, at $100,000 each. Respondent, a co-general partner, owned two units, and his management fee was approximately 3% of the $3.4 million total capitalization. In seeking to expedite a $2.8 million loan for this operation from Chrysler Credit Corporation, respondent took a notary stamp from the office of another attorney and fraudulently notarized a number of the documents required for the application.

Respondent admitted that these criminal acts were committed voluntarily, and were not the result of any substance

abuse. In 1987 he reached a civil settlement with Insurance Company of North America, by which he agreed to cooperate in the insurer's investigation of the partnerships and their investors. This cooperation extended over the next six years, during which period respondent also assisted the United States Attorney's office in Florida in its investigation of loans made by North Florida Production Credit Association. Respondent had requested that he not be sentenced until the Government had received the full benefit of his cooperation. He may have paid a heavy price for this cooperation. In March 1992, just days before his scheduled deposition at Insurance Company of North America, respondent was assaulted in broad daylight on a Manhattan street by a pipe-wielding individual, and suffered fractures of his face and jaw.

On March 29, 1993, respondent was sentenced to two months' imprisonment, five years' probation, and 500 hours of community service. The imprisonment was modified on July 30 to 60 days' home detention.

The petition supports the recommendation of the "show cause" panel that respondent be suspended for four years, effective April 21, 1994 (the date the panel concluded its hearings), or for the duration of his Federal probation (five years, commencing August 1993). Respondent cross-moves for a different formula, citing in mitigation his candid admission of guilt, his cooperation over the years with both civil and criminal investigative authorities, the injuries he suffered apparently as a result of such cooperation, a clean prior record, and his recent involvement in community work. His counterproposal calls for suspension of four years effective July 6, 1989 (the date of our interim suspension order), or for the duration of his Federal probation.

We find any type of suspension to be inadequate discipline here. Aside from the injuries respondent suffered, the points he offers in mitigation are the very things he obligated himself to do in bargaining for a Federal sentence that included a minimal—and then, no—term of imprisonment. Respondent's fraudulent acts were motivated by greed. He may very well have squared his accounts with Federal prosecutors and with those whom he defrauded, but that does not clear his fitness to practice law.

While Federal "serious crime" convictions for wire fraud and making false statements have generally been met with

the sanction of suspension from practice *(see, e.g., Matter of Laboz,* 200 AD2d 239; *Matter of Cecil,* 190 AD2d 986; *Matter of Martin,* 181 AD2d 156), this respondent's deliberate engagement in a spiraling series of fraudulent acts in conjunction with an unsavory business associate who he had good reason to believe was involved in criminal conduct warrants the more severe sanction of disbarment *(see, Matter of Catalfo,* 181 AD2d 213). Accordingly, we reject the recommended suspension and find that disbarment is the only appropriate punishment *(see, Matter of Friedman,* 196 AD2d 280, 296, *appeal dismissed* 83 NY2d 888, *cert denied* — US —, 115 S Ct 81).

The petition for suspension is rejected, as is respondent's cross motion for an alternative form of suspension. Respondent is disbarred, effective immediately, and his name should be stricken from the roll of attorneys authorized to practice law in this State.

SULLIVAN, J. P., WALLACH, RUBIN, KUPFERMAN and WILLIAMS, JJ., concur.

Respondent's name is directed to be struck from the roll of attorneys and counselors-at-law in the State of New York, effective April 25, 1995.