[661 NYS2d 614]

In the Matter of RICHARD W. WOODWARD (Admitted as RICHARD WAYNE WOODWARD), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 31, 1997

**APPEARANCES OF COUNSEL**

*Elyse N. Post* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*James R. Cohen* of counsel *(Simonson & Cohen, P. C.,* attorneys), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent, Richard W. Woodward, was admitted to the practice of law in the State of New York by the First Judicial Department on August 6, 1990, as Richard Wayne Woodward. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

On June 28, 1995, respondent pleaded guilty in the United States District Court for the Southern District of New York to one count of conspiracy to commit securities fraud in violation of 18 USC § 371. Respondent was sentenced to five months' home detention, two years' probation, 150 hours of community service, and a special assessment of $50. Respondent also paid $25,000 in restitution as a result of a civil proceeding commenced by the United States Securities and Exchange Commission (SEC) relating to his criminal conduct. Respondent committed the underlying misconduct between May 1990 and December 1994, while an associate in the corporate department at the firm Cravath, Swaine & Moore. During that time, respondent provided material, nonpublic information about merger and acquisition activities of firm clients to his brother, John Woodward, and to his friend, Warren Eizman.

By order entered January 4, 1996 (218 AD2d 65), this Court deemed the crime of which respondent was convicted a "serious crime" within the meaning of Judiciary Law § 90 (4) (d) and 22 NYCRR 603.12 (b). We also suspended respondent from the practice of law pursuant to Judiciary Law § 90 (4) (f) and referred the matter back to the Departmental Disciplinary Committee (the DDC) to hear and recommend an appropriate sanction.

Pursuant to that order, a Hearing Panel convened for hearings on October 2 and 9, 1996. At the hearing, respondent urged the Panel to suspend him for a period of time coextensive with his criminal probation. The DDC recommended that he be disbarred. By report issued January 28, 1997, the Panel recommended that respondent be disbarred.

By petition dated March 10, 1997, the DDC is seeking an order confirming the Panel's report and imposing the recommended sanction. By cross motion dated April 22, 1997, respon-

dent is seeking an order disaffirming the Panel's report particularly with regard to the recommended sanction. Respondent proposes, as he did at the hearings, that he be suspended from the practice of law for a period coextensive with the period of his criminal probation.

The Federal investigation into this matter revealed that the insider information that respondent divulged was actually used for illegal trading and proved highly profitable to both his brother and his friend. John Woodward earned about $255,000 while Warren Eizman earned about $132,000 and passed the information on to 11 of his friends and relatives, who earned another $165,000 collectively. However, there was no finding that respondent ever personally traded with the information or profited from the illegal trading.

In mitigation, respondent presented four character witnesses, 23 character letters, and a copy of the "Substantial Assistance" motion that the United States Attorney's office submitted in his Federal case. The character letters and witnesses portray respondent as a person devoted to his family and his church and known for his sincerity, compassion, and strong work ethic. Many of the letters express surprise that respondent would be involved in any type of misconduct and note the anguish he has caused himself and his family by his actions.

Respondent also testified on his own behalf, expressing sincere remorse for his wrongdoing and admitting that he should have "kept his mouth shut". While respondent was unable to give a conclusive explanation for why he disclosed the information, he denied having done so intentionally or for the purpose of illegal trading. He suggested that his indiscretions were prompted by his own "awe" and "amazement" at the financial magnitude of the cases on which he was working; he did not deny that, subconsciously, he might have wanted to help his brother and friend financially. Respondent did not try to justify his misconduct and conceded that he consciously ignored the probable consequences of his actions. He also stated that he was initially unaware that the men were using the information for illegal trades and, on one occasion, after learning that they had done so, asked them both to rescind the trades.

In further support of his position, respondent informed the Panel that he is a Mormon and is actively involved in church activities, such as teaching Sunday school and working with youth programs. Respondent added that the church has played a major role in his life since college, when he spent two years working as a voluntary missionary near Seattle, Washington.

As a result of his conviction, he is prohibited from taking part in many of the church activities in which he was involved, but remains very involved with the church. Many of the character letters are from friends he met at or through his church activities.

As additional evidence in mitigation, respondent pointed to his cooperation with the Government. As a result of his cooperation, the Government was spared the substantial expense that it would have incurred to prove the charges against respondent, his brother and Eizman.

The DDC did not present any witnesses in support of its case. It did present several documents: those relating to respondent's Federal court conviction and two memoranda signed by respondent in 1988 and 1989, respectively, which concerned the prohibition on disclosure and use of inside information.

The question of which sanction would be appropriate here is hotly contested. According to the DDC, this Court's prior decisions establish that disbarment is warranted in such cases absent mitigating circumstances. Respondent argued, and the Panel reasonably rejected, that a two-year suspension constituted a sufficient discipline in this instance. Respondent argued that *Matter of Novak* (200 AD2d 66),[1] *Matter of Greenberg* (212 AD2d 310)[2] and *Matter of Solomon* (135 AD2d 187)[3] supported the imposition of a suspension coextensive with the length of his criminal probation, two years. In distinguishing these cases, the Panel observed: "Respondent's criminal activities persisted over several years and involved the breach of many client confidences. In contrast, the cases relied on by respondent involve more isolated instances of misconduct over shorter time periods. More significantly, these cases do not even involve breach of client confidences." We agree. Under the circumstances of this case, a two-year suspension would be wholly inadequate.

Nonetheless, we find that the Panel's analysis as to the appropriate sanction does not comport with relevant case law. In discussing the sanction, the Panel asserted that this Court has disbarred other lawyers involved in insider trading (*see, e.g.,*

---

1. Attorney suspended for two years retroactive to the date of his sentencing in Federal court.

2. Attorney suspended for a period coextensive with the term of his criminal probation (i.e., five years).

3. Attorney suspended for one year, to be reinstated without further proceedings.

*Matter of Reich*, 128 AD2d 329; *Matter of Grossman*, 135 AD2d 1). Unlike the instant case, however, both Reich and Grossman were convicted of Federal insider trading, for which there is an analogous felony under New York State law, which subjected them to automatic disbarment pursuant to Judiciary Law § 90 (4). The Panel did not cite to, and subsequent research has not revealed, any instance where this Court has disbarred an attorney involved in insider trading where such a sanction was not automatically required by statute.[4] Despite this circumstance, the Panel concluded that *Reich* and *Grossman* establish that disbarment is warranted in insider trading cases unless there are mitigating circumstances, which it did not find here.

Instead, the Panel found factors that aggravated the situation. For example, the fact that respondent's disclosure of the information was a breach of client confidences. Also, the respondent's failure to acknowledge the intentional or conspirational nature of his misconduct. In the latter regard, the Panel stated: "The Panel finds implausible respondent's version of the events underlying his criminal conviction. Rather than constituting the mere by-product of casual social conversations, as respondent suggests, the multiple disclosures of non-public insider information seem to reflect a planned conspiracy to profit illegally. The information describes a pattern of misconduct that the Panel has difficulty ascribing to 'subconscious' design." The Panel further found respondent's acknowledgement that he "consciously disregarded" the probable consequences of his activities not supportive of a lesser sanction.

Nor did the Panel find persuasive the mitigation evidence presented by respondent. First, the Panel was not particularly impressed with respondent's cooperation with the Government in this matter. Noting that respondent did not have to do much, did not risk much and got a favorable deal in the bargain, the Panel observed that "it is questionable whether cooperation with the government even constitutes mitigation under these circumstances" (citing *Matter of Ballinger*, 211 AD2d 6, 8).

---

4. In *Matter of Gottesman* (139 AD2d 229), this Court disbarred an attorney who had been suspended due to his conviction of the "serious crime" of Federal mail fraud. There, however, the disbarment was premised on the attorney's willful failure to comply with the order of suspension.

Recently, however, in *Matter of Adelman* (230 AD2d 113), the Second Department disbarred an attorney who had also pleaded guilty in Federal court to violation of 18 USC § 371, but for conspiracy to commit wire fraud *rather than* securities fraud as in this case. While the case does not reveal any details of the underlying criminal conduct, the case does mention that it involved "blatant fraud, deceit, and dishonesty." *(Supra,* at 115.)

The Panel's displeasure with respondent's plea bargain seems unwarranted. While respondent ultimately received a sentence that did not include a term of imprisonment, he did not bargain for that sentence or for any particular sentence. Rather, the minutes of the plea allocution reveal that respondent agreed to plead guilty and to cooperate fully with the Government in exchange for the Government's promise to write a "Substantial Assistance Letter" at the time of sentencing only if it determined that respondent had cooperated to such an extent that he deserved such a letter. Thus, respondent did not "offer[ ] in mitigation the very obligations he assumed in bargaining for a federal sentence that included no term of imprisonment", as the Panel asserted.

The Panel found the evidence of respondent's substantial involvement in church activities likewise unavailing, noting that respondent's criminal conduct occurred while he was involved in those activities.

While we do not discount the Panel's opportunity to observe respondent firsthand, we find that the character evidence depicts respondent as a decent person who engaged in uncharacteristic behavior, who was deeply affected by his wrongdoing, and who is likely to learn from his mistakes. It should also be noted that respondent has never been admonished by the DDC.

In sum, it is our view that a just outcome in this matter lies somewhere between the Panel's position and respondent's. Respondent must be disciplined appropriately. Prior similar cases are not especially instructive in that they involve sanctions at either end of the spectrum—disbarment or suspensions for the length of the attorney's criminal probation—neither of which appears appropriate here. Given the totality of the circumstances, it would appear that a lengthy term of suspension is the most appropriate result.

Accordingly, we grant the Committee's motion solely to the extent of confirming the Hearing Panel's findings of fact and conclusions of law, and grant respondent's cross motion solely to the extent of disaffirming the recommended sanction and, instead, suspend respondent for an additional period of three years from the date of this Court's order.

MURPHY, P. J., SULLIVAN, WALLACH, RUBIN and WILLIAMS, JJ., concur.

Motion granted only to the extent of confirming the Hearing Panel's findings of fact and conclusions of law and respondent's cross motion is granted solely to the extent of disaffirming the

recommended sanction of disbarment, and respondent is suspended from the practice of law in the State of New York for an additional period of three years from the date of this Court's order, and until the further order of this Court.